Joseph F. NAPORANO and Marcia Naporano; Andrew J. Naporano, Jr. and Sharon Naporano, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 93–106 (AJL).

United States District Court,
D. New Jersey.

Oct. 1, 1993.

Colin Danzis, Walter J. Fessler, Thomas N. Torzewski, Donald B. Fraser, Jr., Lum, Hoens, Conant, Danzis & Kleinberg, Roseland, NJ, for plaintiffs.

Susan C. Cassell, Asst. U.S. Atty., Newark, NJ and David Blair, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## OPINION

LECHNER, District Judge.

This is an action by plaintiffs Joseph F. Naporano ("Joseph Naporano"), Marcia Naporano, Andrew J. Naporano, Jr. ("Andrew Naporano") and Sharon Naporano (collectively, the "Taxpayers") against defendant United States of America (the "Government") to recover deficiencies assessed to and collected from the Taxpayers by the Internal Revenue Service (the "IRS") for the taxable years

1987 and 1988. A complaint (the "Complaint") was filed on 12 January 1993.[1] Jurisdiction is alleged pursuant to 28 U.S.C. § 1346(a)(1).

Currently before the court are the cross motions for summary judgment of the Taxpayers and of the Government.[2] For the reasons set forth below, the motion of the Government for summary judgment is granted; the motion of the Taxpayers for summary judgment is denied.

*Facts* [3]

Joseph Naporano and Andrew Naporano are the sole shareholders of two subchapter S corporations,[4] Naporano Iron & Metal Co. ("Naporano Iron & Metal") and Nimco Shredding Co. ("Nimco Shredding"). 12G Statement, ¶ 1. In 1987 and 1988, both Naporano Iron & Metal and Nimco Shredding received dividends (the "NFS Dividends") from Naporano Foreign Sales Corp. ("Naporano Foreign Sales"). The parties agree Naporano Foreign Sales qualifies as a "foreign sales corporation" within the meaning of the Code.[5] *Id.*, ¶ 3.

In computing their incomes for 1987 and 1988, Naporano Iron & Metal and Nimco Shredding each deducted the NFS Dividends. 12G Statement, ¶ 2. They took the deductions based on their interpretation of section 245(c)(1)(A) of the Code. Section 245(c)(1)(A) allows shareholders of an FSC which are domestic corporations to deduct dividends received from a FSC. 26 U.S.C. § 245(c)(1)(A).

■ Naporano Iron & Metal and Nimco shredding did not have to pay taxes in 1987 and 1988 because they are S Corporations. Under the Code, S Corporations do not pay corporate income taxes on the income they earn. *Id.* § 1363(a). Instead, they are required to file informational tax returns in which they calculate the amount of taxable income which will be attributed to their shareholders. *See Kelley v. Commissioner,* 877 F.2d 756, 758 (9th Cir.1989); 26 U.S.C. § 1363(a) and (b). Accordingly, Naporano Iron & Metal and Nimco Shredding were required to file informational tax returns for

1. Initially, the Government brought a motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6). At a status conference on 14 May 1993, the Government voluntarily withdrew its motion and the parties were granted leave to file summary judgment motions. *See* Minutes of Proceedings, dated 14 May 1993.

2. The Taxpayers have submitted the following in connection with the cross motions for summary judgment: Brief in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Cross–Motion for Summary Judgment (the "Taxpayers Brief"); Reply Brief in Support of Plaintiffs' Cross Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment (the "Taxpayers Reply Brief"); Plaintiffs' Statement of Undisputed Material Facts.
    The Government has submitted the following in connection with the cross motions for summary judgment: Brief in Support of United States' Motion for Summary Judgment (the "Government Brief"); Reply Brief in Support of United States Motion for Summary Judgment and in Opposition to Plaintiffs' Cross–Motion for Summary Judgment (the "Government Reply Brief"); United States' Statement of Undisputed Material Facts (the "12G Statement").

3. The Taxpayers have adopted the 12G Statement for the purposes of the cross motions. *See* Plaintiffs' Statement of Undisputed Material Facts.

4. Subchapter S ("Subchapter S") of the Internal Revenue Code (the "Code"), 26 U.S.C. §§ 1361–1379, defines an "S Corporation" as a "small business corporation" which makes an election under 26 U.S.C. § 1362(a) to be an S corporation. To qualify as a small business corporation, a corporation must be a domestic corporation which (1) is not a member of an affiliated group (a chain of corporations connected by a common parent), (2) has only one class of stock, (3) does not have more than 35 shareholders, and (4) has shareholders who are all individuals (or the estates of individuals), none of whom are nonresident aliens. *See* 26 U.S.C. § 1361(b).

5. A foreign sales corporation ("FSC") is defined in 26 U.S.C. § 922(a) as any corporation which (1) is created or organized under the laws of a foreign country which is party to certain treaty agreements or under the laws of a United States possession, (2) has no more than 25 shareholders, (3) has no outstanding preferred stock, (4) maintains an office outside the United States, (5) has a board of directors which includes at least one non-U.S. resident and (6) is not a member of a controlled group of corporations which includes a domestic international sales corporation. *Id.* § 922(a)(1)(A)–(F); *see Polychrome Int'l Corp. v. Krigger,* 5 F.3d 1522, 1526–1527 (3d Cir.1993).

1987 and 1988 reporting their income for those years. The NFS Dividends, however, would not have been reported as income on the informational returns for Naporano Iron & Metal and Nimco Shredding for 1987 and 1988 because of their position that the NFS Dividends were deductible.

Joseph Naporano and Andrew Naporano each filed a joint return with his spouse for the taxable years 1987 and 1988 which included his *pro rata* share of the income of Naporano Iron & Metal and Nimco Shredding. Complaint, ¶¶ 5, 7, 25 and 27. The shareholders of S Corporations determine their *pro rata* share of the S Corporation income from the informational returns and are required to include that amount as taxable income on their individual tax returns. *Id.* § 1363(b). Accordingly, Joseph Naporano and Andrew Naporano would have determined their *pro rata* share of S Corporation income from the informational returns filed by Naporano Iron & Metal and Nimco Shredding for 1987 and 1988. Because the NFS Dividends were not reported on the informational returns, Joseph Naporano and Andrew Naporano did not include the NFS Dividends in the calculation of their *pro rata* share of the income from the Naporano Iron & Metal and Nimco Shredding. The NFS Dividends, therefore, were not reported by the Taxpayers as taxable income on their returns for 1987 and 1988. As a result, *no* federal income taxes were paid on the NFS Dividends.[6]

Pursuant to an audit, *see* Complaint, ¶ 19, the IRS disallowed the section 245(c)(1)(A) deductions taken by Naporano Iron & Metal and Nimco Shredding. 12G Statement, ¶ 4. As a result, the incomes of Naporano Iron & Metal and Nimco Shredding were recalculated to include the NFS Dividends. *Id.* Under the accounting rules for S Corporations, this additional income was passed through to the Taxpayers as the shareholders of Naporano Iron & Metal and Nimco Shredding. *Id.* As a result of the IRS disallowance and the consequential pass-through of additional income, the IRS assessed the Taxpayers with income tax deficiencies for the taxable years 1987 and 1988. *Id.,* ¶ 5. Joseph Naporano was assessed a deficiency of $380,401 for 1987 and $1,211,682 for 1988. *Id.* Andrew Naporano was assessed a deficiency of $205,-518 for 1987 and $645,793 for 1988. *Id.*

On or about 29 January 1992, the Taxpayers paid the IRS the full amount of assessed taxes. *Id.,* ¶ 6. The Taxpayers also made timely claims for a tax refund, but the IRS did not process those claims. *Id.* After more than six months had elapsed without any action taken by the IRS on their refund claims, the Taxpayers commenced the present action on 21 January 1993. *Id.*

*Discussion*

The parties cross move for summary judgment pursuant to Fed.R.Civ.P. 56 because of an asserted absence of any genuine issues of material facts. Government Brief at 1–2; Taxpayers Brief at 1. The Taxpayers contend they are entitled to a tax refund for amounts paid to the IRS after the IRS disallowed the section 245(c)(1)(A) deductions taken on their 1987 and 1988 tax returns. The Government contends provisions of the Code clearly proscribe the deductions taken by the Taxpayers.

A. *Summary Judgment Standard of Review*

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The present task is to determine whether disputed issues of fact exist, but a district court may not resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *see also Desvi, Inc. v. Continental Ins. Co.,* 968 F.2d 307, 308 (3d Cir.1992) ("threshold inquiry is whether there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably

---

**6.** To the extent the NFS Dividends were generated from foreign trade income, Naporano Foreign Sales was not required to pay taxes on the income. Section 921 allows a FSC to exempt foreign trade income from its taxable income. 26 U.S.C. § 921; *see Polychrome Int'l,* 5 F.3d at 1527 n. 6.

be resolved in favor of either party'") (citations omitted); *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir.1992) ("We apply the test ... (1) Is there no genuine issue of material fact and (2) is one party entitled to judgment as a matter of law?") (quotations omitted); *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir.1991) ("summary judgment is inappropriate when a conflict of a material fact is present in the record"); *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir. 1991) (summary judgment may not be granted "if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed").

All evidence submitted must be viewed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Williams v. New Castle County*, 970 F.2d 1260, 1264 (3d Cir.1992); *Boyle v. Governor's Veterans Outreach & Assistance Center*, 925 F.2d 71, 75 (3d Cir.1991); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir.1990); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir.1989). "Any 'unexplained gaps' in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment." *Ingersoll–Rand Fin. Corp. v. Anderson*, 921 F.2d 497, 502 (3d Cir.1990) (quoting *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir.1989)).

Although the summary judgment hurdle is a difficult one to overcome, it is by no means insurmountable. As the Supreme Court has stated, once the party seeking summary judgment has pointed out to the court the absence of a genuine issue of material fact,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with *"specific facts showing that there is a genuine issue for trial."* Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (emphasis in original, citations and foot-

notes omitted). In other words, the inquiry involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir.1990) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512), *cert. denied sub nom., Roselle v. Brown*, —— U.S. ——, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991); *see also Gray*, 957 F.2d at 1078 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

The Supreme Court elaborated on the summary judgment standard in *Anderson:* "If the evidence [submitted by a party opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). The Supreme Court went on to note in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323–24, 106 S.Ct. at 2553 (footnote omitted); *see also Carlson v. Arnot–Ogden Memorial Hosp.*, 918 F.2d 411, 413 (3d Cir.1990) ("nonmoving party must adduce more than a mere scintilla of evidence in its favor"); *Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 72 (3d Cir.1990) (non-moving party may not rest upon mere allegations); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990) (neither unsupported allegations in pleadings and memoranda of law nor conclusory allegations in affidavits will establish genuine issue of material fact); *Aronow Roofing Co. v. Gilbane Building Co.*, 902 F.2d 1127, 1128 (3d Cir.1990) ("summary judgment will be granted where the non-moving party fails to 'establish the existence' of an element essential to the case").

The dispute between the parties in the present case rests on conflicting interpretations of the Code and of the IRS policy regarding S Corporations and dividends-re-

ceived deductions [7] under section 245(c)(1)(A). Because the parties agree on the facts relevant to this dispute, *see* 12G Statement, the case is a particularly appropriate candidate for summary judgment analysis. *See Continental Ins. Co. v. Bodie*, 682 F.2d 436, 439 (3d Cir.1982); *Armco Inc. v. Glenfed Fin. Corp.*, 720 F.Supp. 1129, 1132 (D.N.J.1989); *United States v. 294 Various Gambling Devices*, 718 F.Supp. 1236, 1242 (W.D.Pa.1989); *see also Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.) ("summary judgment proper where facts are undisputed"), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985); *Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners*, 676 F.2d 81, 84 (3d Cir.1982) ("[s]ummary judgment is a useful procedure when there is no dispute about critical facts and it serves to eliminate expense and delay of unnecessary trials"); *Crain v. Board of Police Comm'rs of Metro. Police Dep't*, 920 F.2d 1402, 1405–06 (8th Cir.1990) (when "unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate").

### B. *Statutory Interpretation*

The dispute between the Taxpayers and the Government centers on an issue of statutory construction as to whether the term "domestic corporation" in 26 U.S.C. § 245(c)(1) includes S Corporations. Section 245(c)(1)(A) provides:

> In the case of a domestic corporation, there shall be allowed as a deduction an amount equal to—

> (A) 100 percent of any dividend received from another corporation which is distributed out of earnings and profits attributable to foreign trade income for a period during which such other corporation was a FSC....

26 U.S.C. § 245(c)(1)(A).

The Taxpayers argue that the word "corporation" in 26 U.S.C. § 245(c)(1) should be interpreted so as to include S Corporations. Taxpayers Brief at 6. Under that interpretation, they argue, the dividends received by Naporano Iron & Metal and Nimco Shredding—both S Corporations—were deductible by those companies. *Id.* They further argue this resulted in the Taxpayers being able to appropriately exclude the amount from their individual tax returns in 1987 and 1988.[8] *Id.* The Government, on the other hand, argues for a more literal interpretation of the word "corporation." Government Brief at 4–5. The Government contends this term includes only "C Corporations"[9] and excludes S Corporations and all other non-corporate entities. Government Brief at 4–5. The construction of section 245(c)(1)(A), as it applies to S Corporations, appears to be an issue of first impression.

"A court's objective in interpreting a [F]ederal statute is to ascertain the intent of Congress and to give effect to its legislative will." *In re Southwest Aircraft Servs., Inc.*, 831 F.2d 848, 849 (9th Cir.1987) (citing *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975)), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101

---

7. Normally, shareholders are required to include as part of their taxable income any dividends they receive. The Code, however, allows shareholders which are corporations to deduct, in some instances, a percentage of the dividends they receive. *See, e.g.*, 26 U.S.C. §§ 243 (dividends of domestic corporations), 245 (dividends of foreign corporations), 247 (preferred stock of public utility companies). These deductions are generally referred to as dividends-received deductions.

8. The Taxpayers' interpretation of the Code would allow the dividends received from Naporano Foreign Sales to remain untaxed until some future date to be solely determined by the Taxpayers. Specifically, Naporano Iron & Metal and Nimco Shredding would have at their disposal a significant sum of money (more than two

million dollars) tax-free. *See* 12G Statement, ¶ 5. The Taxpayers argue that the dividend income should only be subject to Federal taxation if and when Naporano Iron & Metal and Nimco Shredding choose to distribute the money to their shareholders. *See* Taxpayers Brief at 11. The Taxpayers, therefore, would have exclusive control over the decision whether the dividend income would ever be taxed. *See id.*

9. For purposes of Subchapter S, corporations which are not S Corporations are called C Corporations. 26 U.S.C. § 1361(a)(1) ("the term 'C corporation' means ... a corporation which is not an S corporation"). Although, the term "C Corporation" is defined for purposes of Subchapter S, *id.*, in other areas of the Code, C Corporations are referred to simply as corporations.

L.Ed.2d 885 (1988); *see Office of Workers' Compensation Programs, United States Dep't of Labor v. O'Keefe,* 545 F.2d 337, 343 (3d Cir.1976); *United States v. Papercraft Corp.,* 540 F.2d 131, 136 (3d Cir.1976). In determining the legislative intent of Congress, "'the starting point' should be 'the language itself.'" *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)); *see also International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, ――, 111 S.Ct. 1700, 1705, 114 L.Ed.2d 134 (1991); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Velis v. Kardanis,* 949 F.2d 78, 81 (3d Cir.1991).

◾ Under principles of statutory construction "where the terms of a statute are unambiguous, judicial inquiry is complete." *Adams Fruit Co. v. Ramsford Barrett,* 494 U.S. 638, 642, 110 S.Ct. 1384, 1387, 108 L.Ed.2d 585 (1990). In such a case, where the plain meaning of a statute is evident from the face of the statute, "'the sole function of the courts is to enforce it according to its terms.'" *Ron Pair,* 489 U.S. at 241, 109 S.Ct. at 1030 (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)); *see also In re Continental Airlines, Inc.,* 932 F.2d 282, 287 (3d Cir.1991). If the language is ambiguous, a court should consider the legislative history of the statute. *See, e.g., Continental Airlines,* 932 F.2d at 287; *In re Victoria Station Inc.,* 875 F.2d 1380, 1383 (9th Cir.1989).

### 1. Construction of Code Provisions

◾ Because Congress intends to tax all income except that which has been specifically exempted, there exists a long-standing rule that the terms of any provision allowing a deduction are to be strictly construed.

> Under our system of Federal income taxation, ... every element of gross income of a person, corporate or individual, is subject to tax unless there is a statute or some rule of law that exempts that person or element.

*HCSC–Laundry v. United States,* 450 U.S. 1, 5, 101 S.Ct. 836, 838, 67 L.Ed.2d 1 (1981); *see Deputy v. du Pont,* 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940) (deductions only allowed where there is a "clear provision"); *White v. United States,* 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172 (1938) ("'every deduction from gross income is allowed as a matter of grace'") (quoting *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934)); *Helvering v. Inter–Mountain Life Ins. Co.,* 294 U.S. 686, 689–90, 55 S.Ct. 572, 574, 79 L.Ed. 1227 (1935) ("[d]eductions are allowed only when plainly authorized"); *Miller v. Quinn,* 792 F.2d 392, 394–95 (3d Cir. 1986) ("only as there is a clear provision ... can a particular deduction be allowed").

◾ Taxpayers seeking deductions "must be able to point to an applicable statute and show that they come within its terms." *New Colonial Ice,* 292 U.S. at 440, 54 S.Ct. at 790.

> It has long been settled that the burden of proof in the litigation of tax matters generally rests with the taxpayer, and it places on the taxpayer the burden of going forward with the evidence as well as the burden of persuasion.

*Smelley v. United States,* 806 F.Supp. 932, 934 (N.D.Ala.1992) (citing *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623, (1935)); *see also Reinecke v. Spalding,* 280 U.S. 227, 232–33, 50 S.Ct. 96, 98, 74 L.Ed. 385 (1930) ("[i]t is necessary for the taxpayer to show the illegality of the [IRS] exactions"); *Granzow v. Commissioner,* 739 F.2d 265, 268 (7th Cir.1984) (taxpayer bears the burden of proof); *South Jersey Sand Co. v. Commissioner,* 267 F.2d 591, 593 (3d Cir.1959) (same); *Morales v. United States,* 805 F.Supp. 1062, 1067–68 (D.P.R. 1992) (same). Any ambiguities in the Code provisions allowing deductions are to be resolved in favor of the Government. *White,* 305 U.S. at 292, 59 S.Ct. at 184.

### 2. Overview of Subchapter S Corporations

The relevant statutory provisions at issue in this case are: (1) the provisions in Subchapter S of the Code, particularly section 1363(b) and (2) section 245(c)(1)(A), a provi-

sion which allows a dividends-received deduction.

■ Subchapter S, 26 U.S.C. §§ 1361–79, was added to the Code through the Technical Amendments Act of 1958, Pub.L. No. 85–866 (1958), and amended by the Subchapter S Revision Act of 1982, Pub.L. No. 97–354 (1982). Subchapter S was enacted with the intention of "eliminat[ing] tax disadvantages that might dissuade small businesses from adopting the corporate form and to lessen the tax burden on such businesses." *Bufferd v. Commissioner,* — U.S. —, —, 113 S.Ct. 927, 928, 122 L.Ed.2d 306 (1993); *Great Cruz Bay, Inc. v. Wheatley,* 495 F.2d 301, 305–06 & n. 6 (3d Cir.1974); *see also* S.Rep. No. 640, 97th Cong., 2d Sess. 5 (1982) U.S.Code Cong. & Admin.News pp. 3253, 3257. The Code accomplishes this purpose by means of a "pass-through" system under which corporate income, losses, deductions and credits are attributed to individual shareholders in a manner akin to the tax treatment of partnerships. *Bufferd,* — U.S. at —, 113 S.Ct. at 929; *Great Cruz Bay,* 495 F.2d at 305–06 & n. 6; *see* 26 U.S.C. §§ 1363–68. "Generally [S Corporation] income is treated as ordinary income to the shareholder without the retention of any special characteristics it might have had in the hands of the corporation."[10] S.Rep. No. 1983, 85th Cong., 2d Sess. 86 (1958). Although S Corporations file informational tax returns in which they determine the amount of income to be allocated to their shareholders, only the shareholders pay tax on the income. *See Kelley,* 877 F.2d at 758; 26 U.S.C. § 1363(a) and (b).[11]

■ As a matter of substantive corporate law, an S Corporation is organized and operated as any other corporation. The principal difference between S Corporations and other corporations is the pass-through nature in which its income is treated for tax purposes. *See Katz v. Sullivan,* 791 F.Supp. 968, 984 (E.D.N.Y.1991). The hybrid nature of S Corporations has caused some confusion over whether S Corporations are more closely related to C Corporations or to partnerships. The answer appears to be S Corporations are corporations for many non-tax purposes[12] but share the tax aspects of partnerships. *See Katz,* 791 F.Supp. at 984 (" '[i]t is common for tax practitioners to refer to an S Corporation as a corporation which is taxed like a partnership' ") (quoting CCH S Corporations Guide ¶ 6205 at 2793). However, even for some tax purposes S Corporations are treated like C corporations. *See, e.g., id.* (recognized the corporate status of S Corporation for purpose of calculating the tax on net-earnings from self-employment).

Section 1371 of Subchapter S, for example, states: *"[E]xcept to the extent inconsistent* with this subchapter, subchapter C [which governs C Corporations] shall apply to an S [C]orporation and its shareholders."[13] 26

---

**10.** The individual tax treatment of S Corporation income is provided by section 1363(b). Section 1363(b) states:

> The taxable income of an S [C]orporation shall be computed in the same manner as in the case of an individual.

26 U.S.C. § 1363(b). Section 1363(b) also creates four exceptions to this rule; none of these exceptions applies in the instant case. *See* 26 U.S.C. § 1363(b)(1)–(4).

**11.** In contrast, C Corporations are generally treated as entities separate and apart from their shareholders, so income earned by C Corporations is taxed twice; once at the corporate level, and again at the individual level when profits are distributed as dividends to the shareholders. *See* 26 U.S.C. §§ 61, 301.

**12.** For example, S Corporations enjoy the same limited liability as C Corporations. *Katz,* 791 F.Supp. at 984. In some states, S Corporations are treated like C Corporations for purposes of state taxes. *See, e.g., Commonwealth v. N.I., Inc.,* 31 Pa.Commw. 235, 237, 375 A.2d 898, 898–99 (1977), *aff'd,* 482 Pa. 261, 393 A.2d 653 (1978); *Garlin v. Murphy,* 42 A.D.2d 30, 33, 344 N.Y.S.2d 402, 405 (1st Dep't), *aff'd* 34 N.Y.2d 921, 359 N.Y.S.2d 552, 316 N.E.2d 869 (1973). Like C Corporations, S Corporations are prohibited from invoking the Fifth Amendment privilege against self-incrimination to prevent the disclosure of corporate records which might incriminate a shareholder. *See United States v. Hansen Niederhauser Co., Inc.,* 522 F.2d 1037, 1039 (10th Cir.1975); *United States v. Richardson,* 469 F.2d 349, 350 (10th Cir.1972).

**13.** Because section 1371(a), by its language, restricts its application to the provisions in subchapter C, it does not directly apply to the question presented in the instant case. Section 245(c)(1)(A), a dividends-received deduction provision, is not found in Subchapter S, but in subchapter B.

U.S.C. § 1371(a)(1) (emphasis added). Therefore, the determining factors in deciding how to treat an S Corporation appear to be (1) whether the situation involves a tax question and (2) whether the proposed tax treatment would be inconsistent with the pass-through nature of the provisions in Subchapter S.

### C. Whether S Corporations are "Domestic Corporations" Within the Meaning of Section 245(c)(1)(A)

#### 1. Statutory Language

As discussed, the starting point for the analysis of a statutory provision must be the language of that provision. *See Watt*, 451 U.S. at 265, 101 S.Ct. at 1677; *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030; *International Primate*, 500 U.S. at ——, 111 S.Ct. at 1705. Section 245(c)(1)(A) allows a shareholder which is a corporation to take a deduction equal to one hundred percent of the dividends it receives from a FSC.

In the instant case, the text of the statute at issue is not entirely helpful because it is susceptible to competing reasonable interpretations. The Government argues the term "domestic corporation" includes only C Corporations and excludes S Corporations and all other non-corporate entities. Government Brief at 4–5. The Taxpayers contend the language of section 245 makes no such distinction between C Corporations and S Corporations, and, therefore, S Corporations are included within the section. Taxpayers Brief at 6. Because section 245(c)(1)(A) neither expressly includes nor excludes S Corporations, the issue cannot be resolved solely from its text.

#### 2. Legislative History

■ Where the statutory language is ambiguous, the court must turn to the legislative history. *See Continental Airlines*, 932 F.2d at 287; *Victoria Station*, 875 F.2d at 1383. When the constructions urged by both the taxpayer and the Government in a tax refund case are reasonable interpretations of the statutory language, "the court should not disregard any expressions of legislative intent in the committee reports." *Greenville*

*Steel Car Co. v. United States*, 615 F.2d 911, 912, 222 Ct.Cl. 400 (1980).

The purpose of section 245 has been described as providing

> that a portion of the export income of an eligible [FSC] will be exempt from Federal income tax. It will also allow a domestic corporation a 100 percent dividend-received deduction for dividends distributed from the FSC out of earnings attributable to certain foreign trade income. Thus, there will be no corporate level tax imposed on a portion of the income from exports.

Staff of the Joint Comm. of House and Senate on Taxation, *General Explanation of Revenue Provision of the Deficit Reduction Act of 1984*, H.R.Doc. No. 4170, 98th Cong., 2d Sess. 1042, 1059 (1984).

The legislative history of section 245(c)(1)(A) does not provide any further illumination on whether to construe the term "domestic corporation" to include S Corporations. Although the legislative history generally refers to the policies underlying the need to provide a special deduction for dividends attributable to foreign trade income, it provides no specific direction on determining whether S Corporations are precluded from eligibility under section 245(c)(1)(A).

#### 3. Section 245(c)(1)(A) and its Relation to the Code as a Whole

■ Because neither the language of section 245(c)(1)(A) nor its legislative history is helpful, a wider review of the policies underlying Subchapter S and other relevant provisions of the Code must be effected to decide the issue. Accordingly, "the overall statutory framework" of Subchapter S must be analyzed. *See Pleasant Summit Land Corp. v. Commissioner*, 863 F.2d 263, 273 (3d Cir. 1988), *cert. denied*, 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 210 (1989). In this regard, the sections of the Code must be read so as to be consistent with one another. *See generally Huber v. Casablanca Indus., Inc.*, 916 F.2d 85, 97 (3d Cir.1990), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993).

■ As discussed, under section 1363(b) of the Code, all of the income of an S Corporation is passed through to the shareholders and taxed at the individual level. 26 U.S.C. § 1363(b). Section 245(c)(1)(A) was not in existence at the time section 1363 was enacted in 1958 or amended in 1982, so Congress never dealt specifically with the issue of whether section 1363(b) bars S Corporations from taking advantage of section 245(c)(1)(A). However, Congress did address the issue of whether a dividends-received deduction under another provision of the Code applied to S Corporations. *See* S.Rep. No. 640 at 15, U.S.Code Cong. & Admin.News pp. 3253, 3266. In that context, Congress concluded the dividends-received deduction did not apply to S Corporations.

> As in the case of partnerships, deductions generally allowable to individuals will be allowed to [S Corporations], but provisions of the Code governing the computation of taxable income which are applicable only to corporations, *such as the dividends received deduction* (sec. 243) [14] or the special rules relating to corporate tax preferences (sec. 291) *will not apply.*

*Id.* (emphasis added). The IRS has reiterated this conclusion:

> The preclusion of the [dividends-received deduction] falls under the purview of section 1363(b) of the Code which essentially provides that an S [C]orporation computes its earnings as if it were an individual. Under section 243, only corporations are allowed [dividends-received deductions].

**14.** Section 243(a) provides:

> In the case of a corporation, there shall be allowed as a deduction an amount equal to the following percentages of the amount received as dividends from a domestic corporation which is subject to taxation under this chapter. 26 U.S.C. § 243(a). The section was enacted to eliminate the double taxation of dividends distributed to shareholders which are corporations. *See United States v. Georgia R.R. & Banking Co.,* 348 F.2d 278, 282 (5th Cir.1965) (section 243 enacted to prevent double taxation of corporate profits), *cert. denied,* 382 U.S. 973, 86 S.Ct. 538, 15 L.Ed.2d 465 (1966); *Joseph L. O'Brien Co. v. Commissioner,* 301 F.2d 813, 814–17 (3d Cir. 1962) (same), *cert. denied,* 371 U.S. 820, 83 S.Ct. 37, 9 L.Ed.2d 61 (1962); *King Enters., Inc. v. United States,* 418 F.2d 511, 521, 189 Ct.Cl. 466 (1969) (same).

Tech.Adv.Mem. 9245003, 9245004 n. 1 (July 28, 1992) (citing legislative history of 1982 amendment of Subchapter S); *see United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982) ("deference is ordinarily owing to the agency construction"); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (same); *American Medical Ass'n v. United States,* 668 F.Supp. 1085, 1096–97 n. 20 (N.D.Ill.1987) (technical advice memoranda is instructive in interpreting Code), *aff'd in part rev'd in part on other grounds,* 887 F.2d 760 (7th Cir.1989). In fact, the Taxpayers agree the dividends-received deduction under section 243 is not available to S Corporations. Taxpayers Reply Brief at 1.

■ Congress and the IRS have interpreted the language in section 243(a) as applying only to C Corporations. *See* S.Rep. No. 640 at 15; Tech.Adv.Mem. at 9245004 n. 1. The operative language of section 245(c)(1)(A) is substantially the same as the language of section 243. Section 245(c)(1)(A) applies "in the case of a domestic corporation," and section 243 applies "[i]n the case of a corporation." 26 U.S.C. §§ 243(a) and 245(c)(1)(A). Therefore, as argued by the Government, the intent of Congress and the IRS to proscribe the use of section 243 by S Corporations may be construed as an indication that the use of the deduction under section 245(c)(1)(A) is similarly proscribed.[15] *See Jordan v. Lyng,* 659 F.Supp. 1403, 1412 (E.D.Va.1987) ("the legislature is presumed to intend the same result by using similar

**15.** Commentators addressing the issue have also concluded that section 245(c)(1)(A) does not apply to S Corporations. *See* James S. Eustice & Joel D. Kuntz, *Federal Income Taxation of S Corporations* ¶ 2.04[16][a] & n. 280 (3d ed. 1993) ("the ... dividends-received deduction [under § 245(c)(1) ] will not apply to dividends received from the FSC by the S [C]orporation and its shareholders"); Samuel P. Starr, *S Corporations: Operations* 731 Tax Management, A–130, A–142 (BNA 1992) ("FSC income is subject to tax when distributed to the S [C]orporation because the S [C]orporation's shareholders are not eligible for the dividends-received deduction"). In contrast, the Taxpayers have been unable to point to *any* authority which agrees with their interpretation of section 245(c)(1)(A).

language in similar legislation"); *see also Lutz v. Chromatex, Inc.*, 730 F.Supp. 1328, 1332 (M.D.Pa.1990) ("[i]n determining the legislative intent of a particular statute, the court may look to other similar statutory provisions").

In addition, the dividends-received deduction is unnecessary in the context of S Corporations. Subchapter S eliminates the corporate level of taxation, *see* 26 U.S.C. § 1363(b), so it is redundant to apply provisions such as sections 243 and 245(c)(1)(A) which were also enacted to eliminate, for the specified purposes, the corporate level of taxation. *See Georgia R.R. & Banking*, 348 F.2d at 282 (section 243 enacted to prevent double taxation of corporate profits); *Joseph L. O'Brien Co.*, 301 F.2d at 814–817 (same); H.R. No. 4170 at 1059 (under section 245(c) "there will be no corporate level tax imposed on a portion of the income from exports").[16] A statute should not be interpreted in a way that would render any of its provisions superfluous. *United States v. Nordic Village, Inc.*, — U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *Department of Pub. Welfare v. United States Dep't of Health and Human Servs.*, 928 F.2d 1378, 1385 (3d Cir.1991).

The Taxpayers place significance on the fact that section 245(c)(1)(A) was enacted in 1984 and, therefore, was not in existence when Subchapter S was enacted in 1958 and amended in 1982. Taxpayers Brief at 15. However, merely because Congress did not specifically consider section 245(c)(1)(A) when it established the pass-through nature of Subchapter S, does not bar the application of Subchapter S to that provision. Where, as in the instant case, "Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators." *Barr v. United States*, 324 U.S. 83, 90, 65 S.Ct. 522, 525, 89 L.Ed. 765 (1945). Similarly, in construing a tax statute, the court in *Pool v. Commissioner* stated:

> The excellence of our jurisprudence is its flexibility. In applying general statutory language to particular situations, courts best conform to the tradition of growth of our system when they adapt realistically general principles to different or constantly changing situations.

251 F.2d 233, 237–38 (9th Cir.1957), *cert. denied*, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958).

As discussed, the Taxpayers have the burden of proving the propriety of their deductions. They have failed to come forward with a clearly applicable Code provision allowing their deduction. Each of the attempts by the Taxpayers to distinguish section 245(c)(1)(A) fails because each argument seeks an interpretation inconsistent with the pass-through nature of S Corporations. The argument of the Taxpayers that they are penalized by an interpretation of section 245(c)(1)(A) which excludes S Corporations, *see* Taxpayers' Brief at 11, is presented in the wrong forum; that argument is one better "addressed to Congress, not the courts." *Granada Wines, Inc. v. New England Teamsters and Trucking Indus. Pension Fund*, 748 F.2d 42, 45 (1st Cir.1984). Moreover, to the extent any ambiguity remains as to Con-

---

**16.** The following is an illustration of the redundancy of a dividends-received deduction in the context of S Corporations. In the absence of any dividends-received deduction rules, the profits earned by a corporation which is the subsidiary of another corporation would be subject to Federal income taxes at three different levels: (1) the subsidiary would be taxed on the profits it earned, *see* 26 U.S.C. § 61; (2) the parent corporation would be taxed on any dividends it received from the subsidiary, *see id.* at § 301(c); and (3) the shareholders of the parent corporation would be taxed on any dividends they received from the parent corporation. *See id.* at § 301(c). The mechanics of section 245(c)(1)(A) are virtually identical, with the only significant difference being the subsidiary corporation is a FSC. *See id.* at § 245(c)(1)(A).

Substituting an S Corporation for the parent corporation in the above example illustrates that the dividends-received deduction is unnecessary in the context of S Corporations: (1) profits would be taxed at the subsidiary level; (2) when the dividend was distributed to the parent— which is an S Corporation—the dividend would pass through to the shareholders of the S Corporation without being taxed at that second level; and (3) the S Corporation shareholders would be taxed on the dividend. *See id.* at § 1363(b). It is therefore unnecessary for an S Corporation to deduct the dividend because S Corporations are not taxed on income at the corporate level.

gress' intent regarding the application of section 245(c)(1)(A) to S Corporations, that ambiguity is to be resolved in favor of the Government. *See White,* 305 U.S. at 292, 59 S.Ct. at 184.

The approach adopted in this case construes section 245(c)(1)(A) so that the Code policies regarding the pass-through nature of S Corporations are consistently advanced. To adopt the approach advocated by the Taxpayers would create an inconsistency in the law.

*Conclusion*

For the reasons stated above, the Government motion for summary judgment is granted; the Taxpayers' cross motion for summary judgment is denied.